AT ROANOKE, VA
FILED

FEB 0 8 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK


CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 8 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| LAURA BATEMAN, <br> Plaintiff, <br><br> v. <br><br> THERAPEUTIC INNOVATIONS, INC. <br> t/a TI WOUNDCARE, <br><br> and <br><br> JONATHAN R. CRADDOCK, <br><br> Defendants. | Civil Action No. 7:05-cv-40060 <br><br> **MEMORANDUM OPINION** <br><br><br> By: Hon. James C. Turk <br> Senior United States District Court Judge |

The above captioned matter concerns a claim of discriminatory sexual harassment in violation of Title VII of the Civil Rights act of 1964 and a supplemental claim of battery under the law of the commonwealth of Virginia. The Defendants have filed a motion in limine requesting several evidentiary rulings in advance of trial. Having considered the Defendant's motion together with the briefs and arguments of both parties, the court concludes that the Defendant's motion must be granted in part and denied in part.

**I.**

The Plaintiff was employed by Defendant Therapeutic Innovations, the CEO of which is Defendant Jonathan Craddock. She claims that Craddock engaged in sexual conduct with other employees and made notably inappropriate comments and jokes of a sexual nature at work on a regular basis. During her period of employment, the Plaintiff attended a business meeting scheduled for November 4–6, 2004 at a condominium on the shore of Leesville Lake. After

-1-

work finished on November 5, the Plaintiff joined several other employees and Craddock in consuming alcoholic beverages. She alleges that Craddock engaged in sexual intercourse with her without her consent later that evening. Immediately thereafter the Plaintiff terminated her employment with the Defendants. She has since filed the instant action.

## II.

The Defendants have asked this court to rule preliminarily on the admissibility of certain items of evidence. Specifically, the Defendants ask the court to exclude evidence of Craddock's history of consensual sexual conduct; evidence of a criminal indictment filed against Craddock under Virginia law;[1] all testimony of Craddock's wife, a variety of sexually suggestive pictures featuring Craddock; dating profiles created by Craddock; e-mails of a sexual nature sent or received by Craddock; and testimony from individuals having no information relevant to this case. The court considers each request in turn.

*a) Evidence of Craddock's history of consensual sexual conduct*

Evidence of Craddock's consensual sexual relationships with persons who have never been employees of T/I Woundcare has no bearing on the claims asserted in this case, and so will not be admitted.

The admissibility of evidence of Craddock's consensual sexual relationships with female employees other than the Plaintiff presents a closer question. The plaintiff asserts a hostile work environment theory in support of her Title VII claim. This requires proof that the offending conduct 1) was unwelcome, 2) was based on the plaintiff's sex, 3) was sufficiently severe or

---

[1] The plaintiff has conceded that Craddock's criminal indictment is not admissible. The court, therefore, does not address the matter.

pervasive to alter the conditions of her employment and create an abusive work environment, and 4) was imputable to her employer. Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006). The Plaintiff asserts that Craddock's sexual relationships with other employees were well known throughout the Plaintiff's work environment, and that Craddock would sometimes act angry and mean toward employees with whom he had sex; this made the work environment unpleasant for everyone, including the Plaintiff. While overhearing a boss's anger toward co-workers may make for a work environment that is unpleasant or even "hostile" in the colloquial sense, it is not conduct based on the plaintiff's sex. The Plaintiff has not shown how a factfinder could conclude that a man in the Plaintiff's position would not have experienced the same environment, or that a man would have been affected by it in a different way.

If evidence of other consensual sexual relationships is relevant at all to the Plaintiff's hostile work environment theory, its probative value is quite low. A substantial danger of prejudice exists however, especially in this case. The Plaintiff asserts that she was raped by the Defendant. A trier of fact might well infer that the Defendant has a propensity toward having extramarital or otherwise licentious sex with employees and thus believe it more likely that rape occurred. This type of prejudice would be unfair because rule 404(b) of the Federal Rules of Evidence prohibits the use of other acts to prove the character of a person in order to show action in conformity therewith.

Evidence of consensual sexual relationships at the workplace are significantly more probative with "quid pro quo" theories of harassment. See Stahl v. Sun Microsystems, Inc., 19 F.3d 533. Quid pro quo harassment occurs when submission to unwelcome sexual conduct is made a condition of concrete employment benefits. See Spencer v. General Elec. Co., 984 F.2d

651, 658 (4th Cir. 1990); 29 C.F.R. § 1604.11(a)(1), (2). Evidence of sex with other employees may be relevant to this type of theory in order to show that the employer favored female employees who submitted to unwelcome sexual advances.

The Plaintiff has indicated that she believes she has been subject to quid pro quo harassment because it was well known in the workplace that those employees who had sex with Craddock received employment related perks such as business trips and automobiles. These allegations support a quid pro quo theory of harassment, however, only to the extent that the sexual advances to which the other employees allegedly submitted in exchange for these benefits are shown to have been unwelcome.

At this stage the court has not seen sufficient evidence to support a conclusion that quid pro quo harassment occurred. The court denied summary judgment in this case largely because of the Plaintiff's allegation of rape.[2] As previously mentioned, the Defendant's consensual sexual contact with other employees adds little to the veracity of that allegation except insofar as it is probative of the Defendant's character in the manner barred by F.R.E. 404(b).

The court, therefore, will preliminarily exclude any evidence of the Defendant's consensual sexual relationships offered by the Plaintiff to prove the substance of her Title VII claims. The court will reconsider this ruling at the appropriate time if the evidence establishes the viability of a quid pro quo theory of discrimination.

---

[2] See Ferris v. Delta Air Lines, 277 f.3d 128, 136 (2d Cir. 2001) (explaining that "[a] single incident of rape" can establish "harassment that was sufficiently severe or pervasive to alter the conditions" of a person's employment); Brzonkala v. Va. Polytechnic Inst. & St. Univ., 132 F.3d 949, 959 (4th Cir. 1997) (recognizing that "rape . . . is plainly sufficient to state a claim for 'hostile environment' sexual harassment"), rev'd on other grounds en banc, 169 F.3d 820, aff'd sub. nom. United States v. Morrison, 527 U.S. 1068 (1999).

Case 7:05-cv-40060-JCT    Document 167    Filed 02/08/07    Page 4 of 7    Pageid#: 1889

Evidence of Craddock's consensual sexual relationships with witnesses in this case is a different matter, as such evidence may bear on a witness's credibility. The court does not have sufficient information to rule on the admissibility of this evidence for this purpose. At the appropriate time during the course of the trial, the court will weigh the probative value of such evidence against the danger of unfair prejudice and determine its admissibility.

### b) Testimony of Deborah Craddock

The court at this time does not have sufficient information to determine the extent to which Mrs. Craddock's testimony is relevant. The court will address specific objections made regarding her testimony at the appropriate time during trial.

### c) Sexually suggestive photographs, dating profiles, and e-mails of a sexual nature

The Defendant wishes to exclude dating profiles, a variety of sexually suggestive photographs featuring Craddock, and e-mails of a sexual nature written or forwarded by Craddock that the Plaintiff did not personally witness until she terminated her employment with the Defendants and commenced this action. Sexual harassment only becomes a Title VII violation where the conduct is sufficiently severe or pervasive to alter the *plaintiff's* conditions of employment. See Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 n.4 (4th Cir. 1996). Nevertheless, several courts have held that evidence of workplace harassment not witnessed by the Plaintiff is admissible in a Title VII claim under some circumstances.[3]

---

[3] See, e.g., Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997); Jackson v. Quanex Corp, 191 F.3d 647, 660 (6th Cir. 1999); Daniels v. Essex Group, Inc., 937 F.2d 1264, 1275 (7th Cir. 1991); Madison v. IBP, Inc. 257 F.3d 780 n.10 (8th Cir. 2001), overruled on other grounds, 536 U.S. 919 (2002); West v. Philadelphia Elec. Co., 45 F.3d 744, 757 (3d Cir. 1995); but see Jones v. Flagship Intern., 793 F.2d 714, 721 n.7 (5th Cir. 1986) (explaining that evidence of sexually harassing incidents reported by others is relevant only in a class action or where the incidents affected the plaintiffs' well being).

As the Court of Appeals for the Seventh Circuit explained, examples of discrimination not witnessed by the plaintiff "serve to demonstrate that [she] did not weave [her] allegations out of whole cloth, and bolster the confidence of the finder of fact in the plaintiff's veracity and in the objective reasonableness of his claims." Daniels, 937 F.2d 1264, 1275 (7th Cir. 1991). Applying this rationale to the Plaintiff's case presents difficulty because all of the conduct in question is alleged to have occurred at the hands of one person, the CEO of the employer. Evidence of other harassing conduct would only bolster the credibility of the Plaintiff's allegations to the extent it suggests that because Craddock harassed other people, it is more likely that he harassed her. When applied to an individual such as Craddock, this is character evidence barred by rule 404(b) of the Federal Rules of Evidence. To the extent it could be offered for any other purpose, its probative value is low and would be substantially outweighed by the danger of unfair prejudice.

The court, therefore, will preliminarily exclude any evidence of sexually suggestive e-mails, photographs, or dating profiles that the Plaintiff did not witness during her term of employment with the defendants. The court will reconsider this ruling if the Defendants raise an affirmative defense or otherwise open the door to this evidence.

*d) Testimony from other individuals*

The Defendants have requested a ruling excluding the testimony of witnesses who were not employed by them contemporaneously with the Plaintiff, as well as other witnesses who have no knowledge of facts relevant to the case. Because the court does not know what these witnesses would say if called to testify, it cannot rule on the matter at this time. During the course of the trial the court will entertain specific objections made at the appropriate time.

## III.

For the foregoing reasons the court will grant the Defendant's motion in part and deny the same in part.

The Clerk of Court is directed to send certified copies of this Memorandum Opinion to all counsel of record.

**ENTER**: This 8th day of February, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE